IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |  |
|---|---|---|
| SHIRLEY ANN MARTIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Action No. 2:14-cv-54 |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner, | : | |
| Social Security Administration, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

Plaintiff Shirley Ann Martin ("Ms. Martin") filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner") denying Ms. Martin's claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. Both parties have filed motions for summary judgment, ECF Nos. 13 and 15, which are now ready for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Ms. Martin's motion for summary judgment, ECF No. 13, be **DENIED**;

the Acting Commissioner's motion for summary judgment, ECF No. 15, be **GRANTED**; the final decision of the Acting Commissioner be **AFFIRMED**, and that judgment be entered in favor of the Defendant.

## I. PROCEDURAL BACKGROUND

On November 3, 2009, Ms. Martin initially filed her application for DIB, alleging a disability onset date of August 26, 2009, R. 89-96,[1] due to "spinal stenosis, bone spurs, spinal cysts, herniated disk, and high-cholesterol." R. 89. To qualify for DIB, Ms. Martin was required to have insurance coverage at the time of disability onset. 42 U.S.C. § 423(a); 20 C.F.R. §§ 404.101(a); 404.131(a). Ms. Martin's date last insured ("DLI") is December 31, 2014. R. 100.[2] Accordingly, Ms. Martin has the burden of establishing the existence of a disability on or before that date. Her application was initially denied on March 18, 2010, R. 97, and denied again upon reconsideration on August 12, 2010, R. 110. Ms. Martin then requested a hearing in front of an administrative law judge ("ALJ"), which was conducted on June 7, 2011. R. 65-88. The ALJ originally issued the decision denying Ms. Martin's DIB application on June 16, 2011. R. 50-64. However, Ms. Martin's representative submitted new evidence that was received by the ALJ on June 15, 2011, and the representative asked that the ALJ re-open the prior unfavorable decision to consider the new evidence. R. 36. The ALJ did so, and re-issued the decision now at issue on July 18, 2011. R. 33-49. Ms. Martin petitioned the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") for review of the ALJ's decision. Ultimately, the Appeals Council denied Ms. Martin's request for review of the ALJ's decision on October 24, 2012, R.

---

[1] "R." refers to the certified administrative record that was filed under seal on May 2, 2014, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

[2] In her original application, Ms. Martin listed her DLI as December 31, 2009. R. 89. However, she amended the DLI to December 31, 2014, in her application for reconsideration after her initial application was denied. R. 100

13-18, and the ALJ's decision became the final decision of the Acting Commissioner. After exhausting her administrative remedies, Ms. Martin filed her complaint for judicial review of the Acting Commissioner's final decision on February 12, 2014. ECF No. 1. The Acting Commissioner filed an Answer on May 2, 2014. ECF No. 9. Ms. Martin filed her motion for summary judgment on June 9, 2014, ECF No. 13, and the Acting Commissioner filed a cross-motion for summary judgment on July 9, 2014, ECF No. 15. No additional briefing was filed, and the time to so file has expired. Accordingly, the matter is ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

In her application, Ms. Martin alleged a disability onset date of August 26, 2009. R. 89. As of that date, Ms. Martin was a 52 year-old female who had graduated from high school and worked previously as a bank teller, sales clerk/associate, and a billing clerk. R. 89, 95-96. At the ALJ hearing held on June 7, 2011, Ms. Martin provided the following testimony:

Ms. Martin testified that she is married without children and lives with her husband in a house. R. 69. During the ALJ hearing, she alternated between sitting and standing, and she was wearing a splint on her right hand due to an arthritic knot in one of her joints. R. 68-69. Ms. Martin last worked in August of 2009 as a bank teller at BB&T bank, but she left because of surgery performed on her back and feet. R. 71. Ms. Martin sole income is derived from approximately $1,366 per month in long-term disability benefits. *Id.*

Ms. Martin testified that pain is her primary problem, specifically in her lower back, hip, and right leg. R. 74. Consequently, she cannot walk much, and uses an electric cart when performing errands like going to the grocery store. *Id.* She also uses a cane that was recommended by her physical therapist and doctor, but not prescribed. R. 71-72. Additionally,

doctors have prescribed various pain medications, which only relieve her pain symptoms for about four hours at a time, R. 72-73, and as a side effect, make her drowsy, R. 84. When she is seated, Ms. Martin feels pain in her lower back, into her hip, and down her right leg, which causes her to stand a couple times per day. R. 82-83. Ms. Martin underwent back surgery in January of 2010, R. 75, but she does not report improvement regarding the pain, R. 83. On a scale from one to ten with ten being the most intense, Ms. Martin describes her pain as a ten, but that the meds bring the pain down to a five, and she has been to the emergency room on occasion because the pain was so severe. R. 84.

According to her testimony, during her typical day, Ms. Martin will watch television, with intermittent breaks of standing up or going outside, R. 73, since she can only sit for fifteen to forty minutes before she must adjust positions, R. 85. She is unable to perform housework and yard work, as she cannot stretch or reach. R. 73. However, she grocery shops once a week, R. 82, and is able to shower by herself if her husband is at home to assist if she falls, R. 73. Ms. Martin smokes one pack of cigarettes per day, notwithstanding her doctors' admonishment that it is detrimental to her health and slows the healing process after surgery. R. 79-80. Ms. Martin is able to drive an automobile, and can carry or lift up to ten pounds. R. 81. Ms. Martin's pain interrupts her ability to sleep; consequently, she very rarely sleeps through the night, and as a result, she naps daily. R. 85. Ms. Martin does not have any significant problems with her concentration and focus. R. 86.

In June of 2009, after complaints of back pain radiating into her right hip, Dr. Jay Pavan ordered an MRI of Ms. Martin's lower back, which showed degenerative disc disease at L4-L5 and L5-S1. R. 231-32. In August of 2009, pain management specialist and anesthesiologist Dr.

Peyman Nazmi assessed Ms. Martin's complaints on referral from Dr. Pavan, and diagnosed Ms. Martin with chronic back pain and lumbar radiculopathy. R. 244-45. Dr. Nazmi recommended transforaminal epidural steroid injections as a diagnostic and therapeutic tool. *Id.* Subsequently, in September, October, and December of 2009, Ms. Martin received lumbar transforaminal epidural steroid injections from Dr. Nazmi. R. 236-42.

On January 19, 2010, Dr. Prakasam Kalluri performed back surgery on Ms. Martin. R. 246-61. Specifically, Dr. Kalluri performed the following procedures:

> 1. L4-5 and L5-S1 decompressive laminectomies with bilateral facetectomies and foraminotomies; 2. L4-5 and L5-S1 transforaminal interbody fusion with right approach with cage devices and right iliac crest autograft, nonstructural; 3. Posterolateral lumbar fusion with local autograft and right iliac crest autograft; 4. Segmental pedicle screw type instrumentation L4 to S1; 5. Intraoperative interpretation of neurologic monitoring; [and] 6. intraoperative use of fluoroscopy.

R. 247. Ms. Martin tolerated the procedure well and no complications were encountered. R. 249. The following day, on January 20, 2010, Ms. Martin was examined by Dr. Irshad Ahmed, who concluded that Ms. Martin was doing well post-surgery, except for complaints of back pain, which were controlled through medication. R. 261.

In February of 2010, Dr. Pavan examined Ms. Martin for diagnoses of chronic lower back pain and right lower extremity pain. R. 275-303. Dr. Pavan ordered another MRI of the lumbar spine to rule out radiculopathy, continued Ms. Martin on anti-inflammatory medication and her current medications, and directed her to ice/heat her back for fifteen to twenty minutes, three to four times per day, and to avoid prolonged standing, heavy lifting, and frequent bending. R. 275. In March of 2010, Dr. Kalluri ordered a CT scan of Ms. Martin's lumbar spine, which revealed postsurgical findings of "small bone density opacities right lateral aspect of the spinal canal L4-5 and L5-S1, possibly from adjacent somewhat fragmented appearing endplates, with

5

the left greater than right lateral disc bulge at L3-4." R. 454-55.

In June of 2010, Dr. Kalluri examined Ms. Martin again, finding that she is "somewhat better since surgery but still has significant back and right leg pain. [Dr. Kalluri] discussed that the healing process after lumbar surgery could be up to 1 year and reassured her that her fusion is taking nicely. [Ms. Martin was a]dvised to continue PT and take Naprosyn and Neurontin for pain." R. 305. Dr. Kalluri planned to follow-up with Ms. Martin in three months to repeat the lumbar spine x-rays, otherwise, Dr. Kalluri observed that Ms. Martin's remaining systems were normal. *Id.*

On June 14, 2010, Dr. Kalluri completed an "attending physician's statement of continued disability" form for Ms. Martin. R. 339-40. Dr. Kalluri opined that Ms. Martin could sit for four hours per day, for thirty minutes at time, that she could stand for two hours per day, for thirty minutes at a time, and that she could walk for two hours per day, for thirty minutes at a time. R. 340. Dr. Kalluri also opined that she could occasionally lift and carry up to 20 pounds, and occasionally bend at the waist, drive, and reach above her shoulder, at her waist, and below her waist, but that she could never kneel or crouch. *Id.*

After the surgery, and specifically from March through June of 2010, Ms. Martin participated in physical therapy for her lower back with some noted progress. R. 341-90, R. 357. In September of 2010, Dr. Kalluri treated Ms. Martin for joint pain in her hands and wrist. R. 472-84. In March of 2011, Ms. Martin presented to Dr. Kalluri again for lower back pain. R. 469. The pain was characterized as a dull ache that pinched in the right leg, located mostly in the lower back and lumbar area, radiating to the later aspect of the right leg, thigh, and groin. *Id.* The examination report revealed that Ms. Martin went to the emergency room in February of

6

2011 because of the pain and was treated by injection. *Id.* Dr. Kalluri ordered another MRI and x-ray of Ms. Martin's lumbar spine, and prescribed Vicodin for pain and Flexeril for muscle relaxation. R. 470. The subsequent MRI revealed a fair amount of postoperative scarring and architectural distortion, and the radiologist posited that the "symptoms may be originating at L3-4 where there is advanced facet DJD." R. 468. Dr. Kalluri's assessment and plan did not change in April of 2011. R. 462-63. In May of 2011, Dr. Kalluri recommended a right hip arthrogram injection, which was given on May 13, 2011, R. 458, followed with a "right SI joint injection if needed and then with a right L5 root injection as well as possibly a right L3-4 fact injection as the MRI did show some degenerative changes at that level," R. 461.

On June 15, 2011, Dr. Kalluri completed another "physical capacities evaluation" form. R. 489-91. Almost a year after his initial opinion, R. 339-40, Dr. Kalluri opined that in an eight hour work day, Ms. Martin could: sit for three hours, stand for two hours, walk for two hours, with alternating positions every thirty minutes. R. 489. She could lift up to five pounds frequently, and up to ten pounds occasionally. R. 490. She could never bend, squat, crawl, climb, or stoop, and she could occasionally reach above her shoulder level. *Id.* Dr. Kalluri concluded that Ms. Martin is "unable to work in any capacity, secondary to chronic lower back pain." R. 491.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Under the Social Security Administration regulations, a sequential five-step analysis evaluation of a disability claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. § 404.1520. In evaluating Ms. Martin's disability claim, the ALJ followed the five-step sequential analysis pursuant to 20 C.F.R. §§ 404.1520(a)

and 416.920(a), considering whether Ms. Martin: (1) was engaged in substantial gainful activity, R. 38; (2) had a severe impairment, R. 39-40; (3) had an impairment that meets or medically equals a condition within the SSA's listing of impairments, R. 40-41; (4) had an impairment that prevents past relevant work, R. 45; and (5) had an impairment that prevents her from any substantial gainful employment. Between steps three and four, the ALJ was required to determine Ms. Martin's residual functional capacity ("RFC") upon considering all of Ms. Martin's impairments. In this case, because the ALJ found that Ms. Martin had the RFC to perform her previous work as a billing clerk in step four, the ALJ had no need to consider step five.

Specifically, the ALJ found first that Ms. Martin met the insured requirements of the Social Security Act through December 31, 2014, and she had not engaged in substantial gainful activity ("SGA") since August 26, 2009, the alleged onset date of disability. R. 38. Second, Ms. Martin had the following severe impairments: degenerative disc disease ("DDD") and obesity, which caused more than minimal limitation on her ability to perform basic work activities. R. 39 (citing 20 C.F.R. § 404.1520(c)). The ALJ found the other alleged impairments—including any allegation of affective disorder—were non-severe because they either "did not exist for a continuous period of twelve months, were responsive to medication, did not require significant medical treatment, or did not result in any continuous exertional or nonexertional limitations." R 39. Upon considering Ms. Martin's alleged affective disorder, the ALJ determined it was non-severe, because it did not cause more than minimal limitation on her ability to perform basic mental work activities, it mildly limited her activities of daily living, social functioning, and concentration, persistence, or pace, and there were no episodes of decompensation. R. 39-40

(discussing the "paragraph B" criteria in 12.00C Listing).

Third, the ALJ determined that Ms. Martin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). Specifically, the ALJ found Ms. Martin failed to make the requisite showing for a spinal disorder. R. 40 (citing Listing 1.00B2b, 1.04(A), (B), (C)). The ALJ also recognized that Ms. Martin's obesity could exacerbate the severity of her other impairments, but ultimately found that Ms. Martin did not satisfy a listing even if her obesity was considered in combination with her other impairments. R. 40-41 (citing R. 391-453).

Next, the ALJ found that Ms. Martin has the RFC to perform the full range of sedentary work. R. 41-44 (citing 20 C.F.R. § 404.1567(a). The ALJ found that Ms. Martin was capable of performing her past relevant work as a billing clerk (sedentary/semi-skilled) as actually and as generally performed. R. 45 (citing 20 C.F.R. § 404.1565; Social Security Ruling 00-4p). Thus, the ALJ concluded that Ms. Martin was not under disability between the period of August 26, 2009 and the date of his decision, July 18, 2011. R. 45 (citing 20 C.F.R. § 404.1520(f)). In support of this conclusion, ALJ gave moderate weight to the Disability Determination Services ("DDS") consultant opinions and concurred with their opinions, but the ALJ nonetheless gave Ms. Martin a more restrictive RFC than the DDS consultants did, due to Ms. Martin's treatment history. R. 44 (citing R. 89-97, 100-110). The ALJ also gave moderate weight to the June 2010 opinion of Dr. Kalluri, which the ALJ essentially equated to an RFC finding of the full range of sedentary work. R. 44 (citing R. 339-40). The ALJ found these opinions to be fairly consistent with the record as a whole. R. 44 (citing 20 C.F.R. § 404.1527; SSR 96-6p). The ALJ assigned

9

minimal weight to Dr. Kalluri's June 2011 opinion because:

> it is not supported by the evidence of record as a whole, and because it is not consistent with the evidence of record as a whole. Specifically, Dr. Kallurie's opinion [from June 2011] is inconsistent with Dr. Kallurie's earlier opinion from June 14, 2010, in which Dr. Kallurie opined that the claimant has the residual functional capacity to perform essentially sedentary work. Since Dr. Kallurie's opinion from June 14, 2010, there has been no objective or subjective findings on examination stating that the claimant's back problems have worsened. In fact, reviews in March 2011 and April 2011 were essentially normal. In summary, the evidence of record as a whole does not support the severity of limitations that are opined in [the June 2011] opinion.

R. 44 (citing 20 C.F.R. § 404.1527; SSR 96-6p; R. 339-40, 488-91, 456-87). In determining Ms. Martin's RFC, the ALJ also analyzed Ms. Martin's credibility regarding her "allegations of disability impairments," and found her statements to be "inconsistent with the objective finds and subjective findings on examination." R. 44. The ALJ relied on, and summarized, medical reports and evidence dating back to June of 2009, and determined that Ms. Martin had the RFC to perform the full range of sedentary work. R. 41-44.

For the fourth and final step in Ms. Martin's case, the ALJ concluded that based on all of the evidence in the record, and given her RFC, Ms. Martin was capable of performing her past relevant work as a billing clerk, as actually and as generally performed, R. 45 (citing SSR 00-4p), which was characterized as sedentary/semi-skilled by the impartial vocational expert ("VE") who testified at the hearing. *Id.* Therefore, the ALJ determined that Ms. Martin had not been under disability any time since August 26, 2009. *Id.*

On judicial review Ms. Martin challenges the final decision of the Acting Commissioner by arguing that the ALJ erred when he concluded that Ms. Martin could perform her "past relevant work" as a billing clerk for three reasons: (1) the billing clerk job is not past relevant work because it was performed outside of the 15 year period prescribed by the regulations; (2)

the ALJ's finding that Ms. Martin can perform the billing clerk position as actually and generally performed is not supported by substantial evidence because the record contains no description of how she performed the "billing clerk" position; and (3) none of the sedentary jobs Ms. Martin previously performed meet the past relevant work standard as they do not qualify as substantial gainful activity. *See generally* ECF No. 14. However, because there is substantial evidence in the record to support the final decision of the Acting Commissioner, and because the ALJ properly applied the law in Ms. Martin's case, the undersigned would grant the Acting Commissioner's motion for summary judgment, and affirm the final decision of the Acting Commissioner.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the

11

[Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th

Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial

evidence and applies the correct legal standard, the Court must affirm the Commissioner's final

decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Ms. Martin contends that the ALJ erred in determining that she could perform her past

relevant work as a billing clerk as actually and as generally performed. At step four of the five-

step sequence, Ms. Martin bears the burden of establishing that she cannot perform her past

relevant work. *Thompson v. Astrue*, 442 F. App'x 804, 806 (4th Cir. 2011) (unpublished per

curiam) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Just like in *Thompson v.*

*Astrue*, here, the five-step sequence terminated at step four, because the ALJ determined that Ms.

Martin could perform past relevant work, and thus, there was no requirement that the ALJ

consider whether Ms. Martin could make an adjustment to other work. *Thompson*, 442 F. App'x

at 807. The following regulations guided the ALJ's determination of whether Ms. Martin could

perform any past relevant work:

> (1) Definition of past relevant work. Past relevant work is work that you have
> done within the past 15 years, that was substantial gainful activity, and that lasted
> long enough for you to learn to do it.
>
> (2) Determining whether you can do your past relevant work. We will ask you for
> information about work you have done in the past. We may also ask other people
> who know about your work. We may use the services of vocational experts or
> vocational specialists, or other resources, such as the "Dictionary of Occupational
> Titles" and its companion volumes and supplements, published by the Department
> of Labor, to obtain evidence we need to help us determine whether you can do
> your past relevant work, given your residual functional capacity. A vocational
> expert or specialist may offer relevant evidence within his or her expertise or
> knowledge concerning the physical and mental demands of a claimant's past
> relevant work, either as the claimant actually performed it or as generally

performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

(3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.

20 C.F.R. § 404.1560(b). A claimant who "retains the RFC to perform: 1. [t]he actual functional

demands and job duties of a particular past relevant job; or 2. [t]he functional demands and job

duties of the occupation as generally required by employers throughout the national economy" is

not disabled. *Titles II and XVI: Past Relevant Work—The Particular Job or the Occupation as*

*Generally Performed*, Social Security Ruling 82-61 at *838 (S.S.A. 1982) ("SSR 82-61").

### A. Ms. Martin's Prior Billing Clerk Position Occurred Within the Regulations' 15-Year Period

First, Ms. Martin claimed the ALJ erred by characterizing the position of "billing clerk"

as past relevant work because it was performed outside of the 15 year period prescribed by the

regulations. ECF No. 14 at 7-8. Specifically, Ms. Martin argued that her work as a billing clerk

occurred in 1994-1995, and that because her "hearing and [the ALJ] decision were in May/July

of 2011 . . . the 15 year period for considering this job as 'relevant' would have ended in either

2009 or 2010." ECF No. 14 at 8. On December 8, 2009, Ms. Martin completed a "work history

report" as a part of her application for DIB. *See* R. 183-190. In "Section 2 – Information About

Your Work," Ms. Martin listed every job she held from 1992 until 2009; a total of twenty-three

positions were listed. *Id.* The instructions state: "List all the jobs that you have had in the 15

years before you became unable to work because of your illness, injuries, or conditions." R. 183 (emphasis added). The regulations further instruct that the Commissioner does "not usually consider that work [the claimant] did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies." 20 C.F.R. § 404.1565(a) (emphasis added). If a claimant's DLI is in the past at the time of the application's adjudication, the DLI becomes the end date for the 15 year period; however, if the DLI is in the future, as it is here, the fifteen year period ends at the date of adjudication. *See* POMS DI 25001.001, Medical-Vocational Quick Reference Guide, § 65. The date of adjudication used when the DLI is in the future "is the date of determination or decision." *Id.*

Ms. Martin claimed that the ALJ erroneously determined her past relevant work history to include the position of "billing clerk." ECF No. 14 at 7-8. Specifically, Ms. Martin asserted that the "billing clerk" position referenced by the ALJ corresponded to her work in 1994-1995, and was therefore outside the fifteen year period. *Id.* In response, the Respondent argued that "[t]he Agency found that Plaintiff did the administrative/billing clerk work from 1994 to 2001; it appears, that this was composite work which she did in conjunction with her work as a sales representative." ECF No. 16 at 14. In support of this argument, the Respondent cited Ms. Martin's Initial Disability Determination, R. 96 (listing "administrative/billing clerk" as her position from "1994-2001" and including this as past relevant work), Ms. Martin's Reconsideration of her Disability Determination, R. 108-09 (same), and Ms. Martin's work history, R. 183, 190. Because the undersigned finds that Ms. Martin self-identified her job in accounts payable performed while working for E.V. Williams as her "billing clerk job," and that

14

job was within 15 of the claimant's adjudication, the ALJ did not err in determining that Ms. Martin could perform her past relevant work as a billing clerk.

Ms. Martin's DLI is December 31, 2014, R. 100, and the ALJ issued his decision on July 18, 2011, R. 33-49. Because Ms. Martin's DLI is in the future, the date of the ALJ's adjudication is used as the end date for the fifteen year period. Accordingly, in considering whether Ms. Martin could perform any of her past relevant work, the ALJ could only consider her work history from July 18, 1996 until July 18, 2011. At the hearing, the ALJ elicited testimony from both the VE and Ms. Martin regarding Ms. Martin's past relevant work experience:

> ALJ: All right, Ms. Augens, would you please describe Ms. Martin's past relevant work over the last 15 years and identify the skill and exertional level of her work.
> Ms. Augens: The billing clerk is semi-skilled and sedentary. The bank teller is skilled and light. The recreation sales clerk is also skilled and light.
> ALJ: Ms. Martin, why did you give up the billing clerk job?
> Ms. Martin: That was at E.B.[3] Williams and we bought the house out in Portland.
> ALJ: Okay, you moved?
> Ms. Martin: Yeah, and I was commuting 131 miles a day. Yeah, I couldn't do it any more.

R. 86-87. Thus, Ms. Martin herself identified her work in 2001 and 2002 as falling within the VE's classification of "billing clerk." *See* R. 183, 190 (listing a work history during 2001 and 2002 to include the job of "accounts payable" while working for "E.V. Williams"). This position falls within the appropriate fifteen year period to be considered past relevant work experience. Ms. Martin's attorney had ample opportunity to question either Ms. Martin or the VE on this issue, but instead, the attorney asked the VE only one hypothetical question that was irrelevant to the classification of Ms. Martin's past work in accounts payable for E.V. Williams as a billing

---

[3] The transcript's recordation of Ms. Martin's statement that she worked for "E.B. Williams" is apparently a scrivener's error as the only remotely possible corresponding employer in Ms. Martin's work history is "E.V. Williams." *See* R. 183, 190.

clerk. R. 87. Moreover, on appeal, Ms. Martin does not explain or in any way challenge her apparent agreement with the VE's classification of her job in 2001 and 2002 as a "billing clerk" position, notwithstanding the fact that she had ample notice of the Commissioner's classification of all of her jobs from 1994-2001 as "administrative/billing clerk" positions. R. 96, 108-109. At no time did Ms. Martin produce any evidence explaining her work experience or challenging the classification of these positions, even though it was her burden to do so. *See* 404.1565(b); R. 183-89 (listing job of "Sales/Acct'g" and providing no specific details on how the job was performed, but providing details on the positions of "Senior Teller," "Admin. Assist.," "Receptionist," "Temp. Worker," "Sales"). Accordingly, the ALJ did not err when he considered Ms. Martin's past relevant work to include her job in accounts payable from 2001 to 2002, and he classified this position as a "billing clerk."[4]

### B. ALJ Properly Relied on the VE and DOT in Finding Ms. Martin Capable of Performing her Past Relevant Work

Second, Ms. Martin claims the ALJ erred by finding she could perform her past relevant work as a billing clerk because the record contains no description of how she performed the billing clerk position, and thus, ALJ's finding that Ms. Martin can perform the position as actually and as generally performed is not substantially supported by evidence in the record. ECF No. 14 at 8-11. However, the agency's regulations do not require the ALJ to provide a description of how she performed the billing clerk position when finding a claimant capable of performing her past work; rather, the ALJ properly relied on the VE testimony during the hearing

---

[4] Because the undersigned finds that Ms. Martin self-identified her position in 2001 and 2002 while working for E.V. Williams as a "billing clerk job," agreeing with the VE's classification, R. 86, and this falls within the relevant fifteen year period, the undersigned has no need to consider whether the classification of Ms. Martin's other positions from 1994 to 2001 were properly identified as billing clerk positions. *See* ECF No. 16 at 14 ("Plaintiff contends that the Agency erred, however, she cites to no evidence, either vocational or non-vocational, that supports her contention that she had not worked as a billing clerk from" 1994 until 2001.).

and the Dictionary of Occupational Titles ("DOT") published by the Department of Labor. R. 45. "In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy. We use these publications at steps 4 and 5 of the sequential evaluation process. We may also use VEs and VSs at these steps to resolve complex vocational issues."[5] *Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) ("SSR 00-4p"). Specifically, under the regulations, VEs and the DOT are used "to obtain evidence [the ALJ] need[s] . . . to determine whether [the claimant] can do your past relevant work, given [his or her] residual functional capacity." 20 C.F.R. § 404.1560(b)(2).

Here, during the hearing, the ALJ elicited testimony from the impartial VE about Ms. Martin's past relevant work. *See* R. 86-87. The VE testified: "The billing clerk is semi-skilled and sedentary. The bank teller is skilled and light. The recreation sales clerk is also skilled and light." R. 86. On cross-examination, Ms. Martin's attorney did not challenge the VE's testimony. Instead, the attorney asked whether a "claimant who is off task 15 to 20 percent of the day due to a combination of her medication side effects and her pain. Would she be able to perform her past relevant work?" R. 87. The VE responded: "No, sir." *Id.* The ALJ also relied on the DOT definition of billing clerk in finding that Ms. Martin was capable of performing her past relevant work. The DOT defines "billing clerk" as:

Operates calculator and typewriter to compile and prepare customer charges, such

---

[5] After the Fourth Circuit's decision in *Smith v. Bowen*, 837 F.3d 635 (4th Cir. 1987), on July 16, 1990, the Social Security Administration published AR 90-3(4) to reflect the Fourth Circuit's holding that ALJ's could not rely on VE's testimony in determining that an individual can perform his or her past relevant work at step four. Subsequently, the agency published by final rule 20 C.F.R. § 404.1560(b), *see supra*, which clarifies the use of VE testimony at step four in subsection (2).

as labor and material costs: Reads computer printout to ascertain monthly costs, scheduled of work completed, and type of work performed for customer, such as plumbing, sheet metal, and insulation. Computes costs and percentage of work completed, using calculator. Compiles data for billing personnel. Types invoices indicating total items for project and cost amounts.

R. 45 (citing DOT, 214.362-042, 1991 WL 671876 (G.P.O. 4th ed.)). The DOT also confirms

that a billing clerk must have an RFC of sedentary work. *Id.*

Ms. Martin argued that "the ALJ could have at a minimum asked Ms. Martin how she

performed the job at the hearing. He also had available to him the ability to have her complete a

more detailed work history report or contact the employer directly for the information. The ALJ

did nothing." ECF No. 14 at 9-10. Importantly, Ms. Martin's argument completely bypasses her

own responsibility at the hearing to proffer evidence to show that she could not perform any of

her past relevant work, including her work as a billing clerk. Indeed, the burden of production

and proof rested with Ms. Martin, not the ALJ. 20 C.F.R. § 404.1512(a) ("In general, you have

to prove to us that you are blind or disabled."); *Hunter v. Sullivan*, 993 F.2d 31, (4th Cir. 1992)

(per curiam) ("Through the fourth step, the burden of production and proof is on the claimant.")

(citing *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983)). It was not the ALJ's obligation

to delve into questioning Ms. Martin on the particulars of her work history; rather, that

responsibility lay with counsel, who apparently declined to challenge the VE's description or

proffer any other evidence to contradict the VE. Barring Ms. Martin's own explanation of her

past relevant work, the ALJ was entitled to rely on the VE's testimony and the DOT's definition.

Therefore, by finding that Ms. Martin could perform her past relevant work as a billing clerk, the

ALJ's findings are consistent with the agency's regulations and requirements, and supported by

substantial evidence. *See* SSR 82-61, at *838 ("Under sections 404.1520(e) and 416.920(e) of

the regulations, a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform . . . . The functional demands and job duties of the occupation as generally required by employers throughout the national economy.").[6]

## C. Ms. Martin's Earnings from 2001-2002 Constitute Substantial Gainful Activity

Lastly, Ms. Martin claimed the ALJ erred by finding she could perform her past relevant work as a billing clerk because none of her former sedentary positions met the substantial gainful activity standard. ECF No. 14 at 11-13 (citing 20 C.F.R. § 404.1560(b)(1) ("Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that last long enough for you to learn to do it.")). Ms. Martin argued that the earning calculations for her past employment period from 2001 until 2005 are insufficient and cannot constitute SGA. ECF No. 14 at 11-12. Under the regulations, if an individual's average monthly earnings was more than a certain amount, that will ordinarily show that the individual engaged in SGA. 20 C.F.R. § 404.1574(b)(2). Specifically, in 2001, average monthly earnings of $740 show SGA, and in 2002, average monthly earnings of $780 show SGA. 20 C.F.R. § 404.1574(b)(2)(i);[7] Monthly Substantial Gainful Activity Amounts by Disability Type, *available at* www.ssa.gov/OACT/COLA/sga.html.

---

[6] While Ms. Martin is correct that there is no evidence in the record about her past relevant work as a billing clerk as actually performed, this is without legal significance, because the ALJ also found that Ms. Martin could perform the past relevant work as a billing clerk as generally performed, as testified to by the VE and as stated in the DOT.

[7] Beginning January 1, 2001, and each year thereafter, an individual's earnings will constitute SGA if they average more than the larger of:

> (A) the amount for the previous year, or (B) An amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998. We will then round the resulting amount to the next higher multiple of $10 where such amount is a multiple of $5 but not of $10 and to the nearest multiple of $10 in any other case.

20 C.F.R. § 404.1574(b)(2)(ii)(B).

The years at issue here are 2001-2002, when Ms. Martin worked as a billing clerk in accounts payable for E.V. Williams. *See* R. 45 ("The claimant is capable of performing past relevant work as a billing clerk (sedentary/semi-skilled); R. 86 (identifying her position at E.V. Williams as her "billing clerk job"); R. 183 (listing work history including positions at E.V. Williams from 2001 to 2002). In 2001, Ms. Martin earned $21,815.15, or $1817.93 on average per month, and in 2002, Ms. Martin earned $17,488.62, or $1457.39 on average per month. R. 162. Both average monthly amounts are more than the monthly average minimum to constitute SGA.

Overall, substantial evidence in the record supports the ALJ's findings and conclusions. Specifically, the ALJ's finding that Ms. Martin could perform her past relevant work as a billing clerk was not contrary to the agency's regulations; rather, it was in accordance with the definition of past relevant work as defined by the regulations, and supported by substantial evidence in the record. Therefore, the Defendant's motion for summary judgment should be granted, and judgment should be entered in her favor.[8]

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Ms. Martin's motion for summary judgment, ECF No. 13, be **DENIED**; the Defendant's motion for summary judgment, ECF No. 15, be **GRANTED**; the final decision of the Acting Commissioner be **AFFIRMED**, and that judgment be entered in favor of the Defendant.

---

[8] Ms. Martin also argues that "[t]he ALJ's error is outcome-determinative: if limited to sedentary work, considering her other 'vocational factors' of age, education, and work experience, a finding of 'disabled' pursuant to the Medical Vocational Guidelines is appropriate and Ms. Martin should be awarded benefits." ECF No. 14 at 13-14. However, as discussed above, because the ALJ's finding that Ms. Martin could perform past relevant work is supported by substantial evidence, the five-step sequence terminated at step four, and thus, there was no requirement that the ALJ consider the other vocational factors and whether Ms. Martin could make an adjustment to other work. *See Thompson*, 442 F. App'x at 807.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the *pro se* Plaintiff and counsel of record for the Respondent.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 17, 2014

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Ms. Krista M. Samuels
Samuels Law Firm
4908 Monument Avenue, Suite 100
Richmond, Virginia 23230
Counsel for the Plaintiff

Mr. Karl E. Osterhout
Osterhout Disability Law, LLC
521 Cedar Way, Suite 200
Oakmont, Pennsylvania 15139
Counsel for the Plaintiff

Mr. Kent P. Porter
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for the Defendant

Fernando Galindo,
Clerk of Court

By:

Deputy Clerk
December 17, 2014